IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**QUALITY CARE DAYCARE AT**     *
   **BUP, LLP,**
                                 *

    **Appellant,**
                                  *

v.                                          Civ. No. DLB-22-901
                                  *

**U.S. TRUSTEE,** *et al.*,
                                  *

    **Appellees.**

## MEMORANDUM OPINION

Debtor Quality Care Daycare at BUP, LLP ("Quality Care") appeals an order of the United States Bankruptcy Court for the District of Maryland converting its Chapter 11 reorganization case to a Chapter 7 liquidation case. ECF 1. The matter is fully briefed. ECF 28, 29, 30, 31. Upon review of the parties' briefs and the record on appeal, ECF 20 & 21, the Court finds a hearing on the merits unnecessary. *See* Fed. R. Bankr. P. 8019(b); Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Court affirms the bankruptcy court's order.

**I.**     **Background**

The Court adopts the bankruptcy court's undisputed findings of fact and supplements with additional facts from the record where appropriate.[1] Quality Care is the record owner of two adjacent properties in Baltimore City, 873 and 875 North Howard Street, from which it receives rental income. ECF 21-21, at 5; ECF 21-22, at 7. It has no employees. ECF 21-22, at 11. It previously operated a daycare facility, but it no longer does. ECF 21-21, at 5. Natalie Tao is either the sole or majority owner of Quality Care. *Id.* at 4. In 2011, the Maryland State Department of

---

[1] It assists the Court when the parties cite to specific portions of the record to support their factual statements. *See* Fed. R. Bankr. P. 8014(a)(6) (requiring "appropriate references to the record"). The Court thanks the U.S. Trustee for doing so.

Assessments and Taxation cancelled Quality Care's charter due to its failure to maintain and file annual reports. *Id.* Ms. Tao sought to revive the registration in 2013, but the Maryland Department of Labor, Licensing, and Regulation issued a do-not-revive notice letter on the account, preventing revival. *Id.* at 5–6. Shortly thereafter, Quality Care voluntarily withdrew its LLP registration. *Id.* at 6. Nonetheless, it continued operating and leasing commercial space. *Id.* The registration remains withdrawn.

Appellee Lakeside National, LLC ("Lakeside") holds liens on Quality Care's properties and all rents generated by them. ECF 21-22, at 9. Lakeside provided a loan for the purchase of the properties in 2006. ECF 21-21, at 4–5. Quality Care disputes the amount it owes to Lakeside. Specifically, it disputes whether "all payments have been properly accounted for and applied to the mortgage[.]" ECF 28, at 8. As a result of this dispute, Quality Care filed for Chapter 11 bankruptcy protection on February 3, 2022. ECF 20-3; *see* ECF 20-2 (docket in Bankr. Case No. 22-10546). It filed an amended voluntary petition on February 22, changing the debtor's business to single asset real estate. ECF 20-9. Alongside its petition, it filed a motion for relief from 11 U.S.C. § 363(c)(2), which prohibits debtors in Chapter 11 cases from using rents upon which a lien has been granted without the consent of the lienholder or court approval. ECF 21-3. Quality Care sought permission to use rental income to continue commercial operations and pay "expenses related to maintaining the premises in a proper fashion [that] are incurred in the ordinary course of the business." *Id.*

Ms. Tao also has filed six personal bankruptcy cases. *See* Bankr. Case Nos. 99-55957, 02-56901, 11-25227, 12-21747, 13-13812 and 19-18681. In her personal filings and in this proceeding, she has taken inconsistent positions about whether she or Quality Care owns the Howard Street properties, the value of the properties, and whether she intends to sell the properties.

2

ECF 21-21, at 5–8. The judge in her most recent personal bankruptcy case stated that her "primary objective seem[ed] to have been protecting real property known as 873–875 North Howard Street, Baltimore, Maryland 21201 from mortgage and tax sale foreclosure sales." ECF 20-49, at 2.

Lakeside moved to dismiss Quality Care's Chapter 11 petition on February 24.[2] ECF 20-10. On March 4, the U.S. Trustee filed a motion to convert the case to Chapter 7 or, in the alternative, to dismiss. ECF 20-23. Lakeside and the U.S. Trustee argued that Quality Care's registration was withdrawn, rendering it ineligible for reorganization under Chapter 11. They contended that, under Maryland law, Quality Care could bring only actions related to winding up its affairs or liquidating its assets; it could not seek to continue its operations. *See* Md. Code Ann., Corps. & Ass'ns §§ 9a-803, 10-803; *Thomas v. Rowhouses, Inc.*, 47 A.3d 625, 629–30 (Md. Ct. Spec. App. 2012) (explaining the impact of forfeiture of a corporate charter). Quality Care opposed both motions. ECF 20-26; ECF 20-34.

The bankruptcy court held a virtual motions hearing on March 24. ECF 21-22 (hearing transcript). Ms. Tao, the debtor's representative, was the only witness at the proceeding. Nonetheless, she "was unprepared to answer questions about tax filings, employees, and inconsistencies between the debtor's schedule and monthly operating reports, as well as other operating details about the business." ECF 21-21, at 9. She also failed to provide clear answers about insurance for the properties and about a $30,000 payroll protection program ("PPP") loan Quality Care received in July 2020. *Id.* at 8–9.

At the close of the hearing, the U.S. Trustee argued that "cause" existed to dismiss or convert the petition for several reasons: (1) Quality Care's registration was withdrawn, (2) it had

---

[2] The Court omits some complexity on the docket that is irrelevant to this appeal. For example, Lakeside first moved to dismiss the petition on February 23, and the bankruptcy court denied that petition for procedural reasons later that day. *See* ECF 20-2.

not established that there was sufficient insurance coverage for the properties, (3) it had failed to provide information requested by the U.S. Trustee, including information relating to insurance coverage and the use of proceeds from a PPP loan it had received, and (4) its case was filed in bad faith. ECF 21-22, at 77–84. It additionally argued that conversion to Chapter 7 was appropriate because there appeared to be misconduct and evasive actions by Ms. Tao, there was a concern that Quality Care would simply refile following dismissal, and a Chapter 7 trustee would protect the estate's interest and liquidate the real property for the benefit of creditors. *Id.* at 84, 97–98. Lakeside joined the U.S. Trustee's arguments that "cause" existed. *Id.* at 85–88. It also supported conversion to Chapter 7, even though it initially had argued only for dismissal. *Id.* Quality Care argued that no "cause" existed for dismissal or conversion. *Id.* at 88–96. It did not express a preference regarding dismissal or conversion if the court found "cause" existed. *See id.*

The Honorable Lori S. Simpson rendered an oral decision on March 28, 2022. ECF 21-21. She ruled that cause existed for dismissal or conversion to Chapter 7 and that conversion was in the best interests of the creditors and the estate. *Id.* at 4. On the former issue, she found several circumstances amounting to "cause," including "gross mismanagement of the estate," "failure [to] maintain appropriate insurance that poses a risk to the estate or to the []public," and "failure timely to provide information . . . reasonably requested by the United States Trustee." *Id.* at 10, 13. Regarding the choice between conversion and dismissal, she stated:

> The Court finds and concludes that conversion to Chapter 7 will be in the best interest of the estate and its creditors. A Chapter 7 trustee will be able to expeditiously market and then sell the entire property. The trustee will be able to navigate the charter issue quickly and determine if it is a true impediment to selling the property. In addition, a Chapter 7 trustee will be able to investigate and resolve the multitude of issues presented in this case, including potential claims against Ms. Tao, and determine what happened to the proceeds of the various PPP loans.

4

*Id.* at 14–15.  Underpinning this reasoning were findings that Ms. Tao's actions "over the past decade or longer, including this case, at a minimum, reflect gross mismanagement and at a maximum, dishonesty[,]" that she "was generally an unreliable witness[,]" and that "debtor and Ms. Tao have been inconsistent, misleading about their intentions in this case regarding reorganization and liquidation[.]"  *Id.* at 4, 10, 14.

Accordingly, Judge Simpson granted the U.S. Trustee's motion to convert to Chapter 7 and denied Lakeside's motion to dismiss as moot.  *Id.* at 15; ECF 20-54 (order).  Quality Care timely appealed.

## II.     Standard of Review

This Court has jurisdiction to hear appeals from orders of the bankruptcy court.  28 U.S.C. § 158(a).  The standard of review for a bankruptcy appeal in district court is the same standard used by the courts of appeals in reviewing a district court proceeding.  *See id.* § 158(c)(2) (providing a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts").  Thus, the Court generally reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 254 (4th Cir. 2007).

## III.    Discussion

Quality Care challenges the bankruptcy court's decision pursuant to § 1112(b)(1) of the Bankruptcy Code to convert the Chapter 11 case to a Chapter 7 proceeding.  It does not challenge any of the court's factual findings.  Section 1112(b)(1) provides that, upon the request of a party in interest, the bankruptcy court "shall convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."  11 U.S.C. § 1112(b)(1).

In deciding whether to convert a Chapter 11 case to Chapter 7, a bankruptcy court first must make a "threshold finding" that "cause" exists either to convert or dismiss the case. *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994). Quality Care concedes that such "cause" existed. Once a threshold finding of "cause" is made, the court turns to the second question and "must ascertain the impact on the creditors and on the estate of each of the options." *Id.* at 243. The court's "decision to convert [or dismiss] will only be overturned for abuse of discretion." *In re Fraidin*, 188 B.R. 529, 532 n.1 (D. Md. 1995), *aff'd*, 110 F.3d 59 (4th Cir. 1997). This is the sole issue raised on appeal. A court abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012). So, while the discretion to choose between dismissal and conversion to Chapter 7 "is not completely unfettered, the courts have not been required to give exhaustive reasons for their decisions." *In re Fraidin*, 188 B.R. at 532 n.1 (quoting *In re Gonic Realty Tr.*, 909 F.2d 624, 627 (1st Cir. 1990)).

The appellees argue that the bankruptcy court's conclusion that conversion was in the best interests of the creditors and the estate is supported by the factual record and was not an abuse of discretion. The U.S. Trustee additionally argues that Quality Care has waived any argument that the bankruptcy court should have dismissed the case rather than convert it to Chapter 7 by failing to raise that issue before the bankruptcy court. The Court agrees on both points.

**A. Waiver**

The U.S. Trustee argues that Quality Care failed to raise its arguments for dismissal before the bankruptcy court and that, as a result, those arguments are waived. The Fourth Circuit long has held that "parties may not raise new arguments on appeal that were not first presented to the

6

district court below, absent exceptional circumstances." *Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022). The same is true in appeals from decisions of the bankruptcy courts. *See Valle v. Wolff*, 627 B.R. 821, 830 (D. Md. 2021) ("Appellant did not raise this issue below—in the motion opposing sanctions, at the hearing, or in the motion for reconsideration—so the Court finds it waived.") (citing *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)); *see also Uplinger v. US Investigations Servs.*, No. 1:13-CV-417, 2013 WL 12107787 (E.D. Va. Aug. 13, 2013) (finding appellant debtor "waived [her] argument when she did not raise it in front of the Bankruptcy Court"), *aff'd*, 558 F. App'x 313 (4th Cir. 2014) (unpublished); *In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011) ("This court has held that when an issue was not raised in the bankruptcy court, a finding that the issue is waived at the district court level is 'the correct result, since to find otherwise would permit a litigant simply to bypass the bankruptcy court.'") (quoting *In re Weber*, 25 F.3d 413, 415 (7th Cir. 1994)). The Court is persuaded that this rule "applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record" to better inform consideration of the relevant issues. *See In re Am. Biomaterials Corp.*, 954 F.2d 919, 927–28 (3d Cir. 1992).

There are no cases from this district on point, but in an analogous case, the United States District Court for the District of New Jersey held that a debtor waived its ability to argue on appeal that its Chapter 11 case should have been converted rather than dismissed by failing to raise the issue before the bankruptcy court. In *Paradigm Elizabeth, LLC v. Empire TFI Jersey Holdings, LLC*, the debtor appealed the bankruptcy court's dismissal order and argued that the court failed to consider whether conversion was in the best interest of all the creditors. 560 B.R. 238, 243 (D.N.J. 2016). The district court noted that the debtor had not requested that the bankruptcy court consider converting its case until after the case had been dismissed and that it had not filed a formal

7

motion with the bankruptcy court on that point despite the bankruptcy court expressly inviting it to do so. *Id.* at 243–44. By failing to raise its arguments for conversion, the debtor "waived the right to complain that its case should have been converted[.]" *Id.* at 244. The district court refused to "find that the bankruptcy court abused its discretion in failing to consider an argument that was never properly presented to it." *Id.*

Like the appellant in *Paradigm Elizabeth*, Quality Care did not argue to the bankruptcy court that either dismissal or conversion was more appropriate than the alternative. Its arguments before the bankruptcy court focused exclusively on the question of whether there was "cause" under § 1112(b)(1) for dismissal or conversion. This is so despite the U.S. Trustee's motion being one for dismissal *or conversion* and despite the U.S. Trustee expressing a preference for conversion at the March 24 motions hearing.

Quality Care argues that it raised the issue in its opposition to the U.S. Trustee's motion to dismiss or convert, found at ECF 20-34. It highlights paragraphs 34, 40, 42, 43 and 48 of its opposition. These paragraphs concerned *In re Superior Siding*, 14 F.3d 240, which Quality Care identified as "the seminal case discussing the analysis of 11 U.S.C. § 1112[.]" ECF 20-34, ¶ 32. Quality Care briefed *In re Superior Siding* and summarized its holdings. As part of this summary, it noted that after "cause" is found to dismiss or convert to Chapter 7, the task of the bankruptcy court is to determine "which option is the better choice." *Id.* ¶ 43. It further noted that the Fourth Circuit held that this analysis "requires a comparison of the results to creditors in bankruptcy with the results to creditors under state law outside of bankruptcy" and vacated and remanded because the bankruptcy court failed to consider "the interests of all creditors" in deciding whether to dismiss or convert. *Id.* ¶¶ 40, 42 (citing *In re Superior Siding*, 14 F.3d at 243). Quality Care concluded by arguing that the "requirements for dismissal or conversion are non-existent in this

8

case" and that the U.S. Trustee "must prove creditors would be better served if the case is converted to Chapter 7." *Id.* ¶¶ 48, 53. It reiterated its opposition to both options during closing argument at the motions hearing. ECF 21-21, at 88, 96.

Missing from Quality Care's briefing and argument before the bankruptcy court is any suggestion that dismissal was the better choice in this case, let alone the only permissible choice. Quality Care simply did not take that position below. It told the bankruptcy court (without emphasis and in a lengthy summary of the relevant law) that it had to consider the interests of all creditors in deciding whether to dismiss or convert to Chapter 7, but that is not the same as arguing that consideration of the interests of all creditors supported dismissal rather than conversion. Likewise, while it raised the issue of the burden of proof to establish "cause" for dismissal or conversion and stated that the U.S. Trustee had to convince the court that conversion would better serve creditors, it never suggested that the court lacked information necessary to make an informed choice between the two options. "Arguments raised in a [lower] court must be specific and in line with those raised on appeal. . . . '[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the [lower] court.'" *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (quoting *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013)). Quality Care never told the bankruptcy court specifically that conversion was inappropriate. At most, it intimated that the interests of unidentified creditors might diverge from Lakeside's interests. Its attempt to recast its prior arguments is unpersuasive.

Quality Care has waived its arguments in favor of dismissal.

9

### B. Conversion was Appropriate

Even if Quality Care had not waived the sole issue it raises on appeal, it would not prevail on the merits. Quality Care contends that the record does not support the bankruptcy court's finding that conversion to Chapter 7 was in the best interest of the estate and its creditors. But it does not point to evidence that suggests dismissal was the better choice.[3] Rather, it argues (1) that the U.S. Trustee failed to carry its burden to establish "cause" for conversion rather than dismissal and (2) that, as a result of the U.S. Trustee's failure to introduce certain evidence, the bankruptcy court did not perform a liquidation analysis and failed to consider the effects of its choice on other potential creditors. Both arguments fail.

First, Quality Care mischaracterizes the law. It takes the uncontested rule that the movant bears the burden of establishing "cause" for either dismissal or conversion under § 1112(b) and attempts to twist it into a requirement that a movant requesting conversion over dismissal must satisfy some undefined burden or else the court must default to dismissal. There is no such requirement. All authorities, including the ones cited by Quality Care in support of its argument, are unanimous that once "cause" is established under § 1112(b), the bankruptcy court must decide whether dismissal or conversion is in the best interests of the creditors and the estate. *In re Superior Siding*, 14 F.3d at 242–43; *see also In re Sydnor*, 431 B.R. 584, 590 (Bankr. D. Md. 2010) ("If cause is established, the court must dismiss the case or convert the case to a Chapter 7, whichever is in the best interest of the estate and creditors[.]"); *In re Helmers*, 361 B.R. 190, 196 (Bankr. D. Kan. 2007) ("The Court is given broad discretion in determining which choice to make but is governed by this 'best interests' test."). There is no second threshold for the movant to meet.

---

[3] This gap in Quality Care's argument undoubtedly is related to its failure to develop the issue before the bankruptcy court and reinforces the Court's conclusion that the waiver rule should apply. *See In re Am. Biomaterials Corp.*, 954 F.2d at 927–28.

10

The bankruptcy court considers the evidence and makes the call. Certainly, a party that desires conversion over dismissal must convince the bankruptcy court that conversion is the better choice. But if it fails to do so and the court chooses dismissal, it is not because dismissal is the default and the party failed to meet some burden of proof; rather, it is because the court believes dismissal is the better choice. *See In re Sydnor*, 431 B.R. at 600 (rejecting movant's preference for conversion because "[t]he court is convinced that the appropriate remedy" was the alternative); *In re Helmers*, 361 B.R. at 198 (rejecting movant's preference for conversion because dismissal better served the interests of the creditors and the estate); *In re Rosenblum*, 609 B.R. 854, 863 (Bankr. D. Nev. 2019) (stating "the moving party also should demonstrate why the alternative it requests is in the best interests of the creditors and the estate").

Here, the bankruptcy court determined that conversion was in the best interests of the creditors and the estate. Its determination was based on its findings that Ms. Tao and Quality Care had filed the case in bad faith and had engaged in a pattern of similar bad faith conduct since 2011. It reasoned that a Chapter 7 trustee would be able to navigate the various issues in the case and "expeditiously market and then sell the entire property[.]" ECF 21-21, at 14–15. Dismissal, conversely, would place the ball back in Ms. Tao's court, a worse outcome for the estate and its creditors. Moreover, Lakeside—the only creditor involved in the proceeding—did not oppose conversion.

This Court has recognized that these are appropriate considerations at the second step of the § 1112(b) analysis. In *Lakefront Investors, LLC v. Clarkson*, this Court cited with approval ten factors identified in an authoritative bankruptcy treatise, including "whether the debtor would simply file a further case upon dismissal[,]" "the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors[,]" "whether any remaining issues would be better resolved

11

outside the bankruptcy forum[,]" and "whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests[.]" 484 B.R. 72, 83 (D. Md. 2012) (citing 7 Collier on Bankruptcy § 1112.04[7]), *aff'd sub nom. Lakefront Invs., LLC v. Sydnor*, 520 F. App'x 221 (4th Cir. 2013) (unpublished). The same treatise "explains that the 'parties will be the best judge of their own interests, and if all the parties agree on one course of action, the court should accommodate their desire.'" *Id.* at 82 (citing 7 Collier on Bankruptcy § 1112.04[7]). The Court ultimately reversed dismissal and ordered conversion to Chapter 7 in part because the participating creditors unanimously welcomed that outcome and the debtor "was dishonest or at least grossly mismanaging the affairs of her estate." *Id.* at 85–86. Those same justifications for conversion are present here.

Quality Care raises red herrings about lingering uncertainty related to the value of the property, the number of creditors and amount of unsecured debt, and who would be paid in a Chapter 7 liquidation. Without that information, suggests Quality Care, the bankruptcy court could not make an informed decision in favor of conversion. It argues that the bankruptcy court could not find conversion in the best interests of all creditors without an express finding that "there were unsecured creditors who would benefit from liquidation[.]" ECF 31, at 11. Setting aside the fact that the reason the bankruptcy court did not expressly consider this information is because Quality Care failed to raise this issue below, Quality Care identifies no authority suggesting this information is necessary in every case. And it is not. In *Lakefront Investors*, this Court ordered conversion to Chapter 7 despite upholding the bankruptcy court's factual finding that the unsecured creditors would not receive payment in a Chapter 7 proceeding. 484 B.R. at 81, 86–87.

Quality Care also states that, as a result of the conversion to Chapter 7, "Lakeside finds itself in a better position than it would have been had Quality Care never filed for bankruptcy"

12

because Lakeside could not have initiated involuntary Chapter 7 proceedings against Quality Care on its own. ECF 28, at 22. This contradicts an earlier statement by Quality Care that Lakeside was "cutting its nose off to spite its face" because an automatic stay preventing foreclosure will remain in effect during the Chapter 7 proceedings. *Id.* To the extent Quality Care argues dismissal was more favorable to Lakeside, Lakeside expressed its openness to conversion, and "parties will be the best judge of their own interests[.]" *Lakefront Invs.*, 484 B.R. at 82 (quoting 7 Collier on Bankruptcy § 1112.04[7]). To the extent Quality Care suggests that it, and not Lakeside, is worse off as a result of the conversion, the bankruptcy court could not consider Quality Care's interests when deciding between conversion or dismissal. *Id.* at 85 (noting the "explicit directive in § 1112 to consider only the interests of creditors and the estate"). In any event, Quality Care fails to identify any authority suggesting Lakeside's inability to initiate involuntary Chapter 7 proceedings against Quality Care somehow renders conversion impermissible.

The bankruptcy court did not abuse its discretion by converting the case to Chapter 7. It made a choice based on appropriate considerations and the information and arguments presented to it, and the record supports its finding that conversion was in the best interest of the estate and its creditors.

## IV. Conclusion

Quality Care waived its argument that the bankruptcy court should have dismissed its Chapter 11 case rather than convert it to Chapter 7. Even if Quality Care had preserved that argument, the bankruptcy court did not abuse its discretion. The bankruptcy court's order converting Quality Care's Chapter 11 case to Chapter 7 is affirmed. A separate order shall issue.

Date: March 27, 2023

_____
Deborah L. Boardman
United States District Judge